**VALI CONVALESCENT & CARE INSTITUTION, Plaintiff,**

v.

**The INDUSTRIAL COMMISSION OF UTAH, Department of Employment Security, Defendant.**

**No. 17803.**

Supreme Court of Utah.

June 11, 1982.

---

**2.** *Id.*

Glen M. Richman, Dennis L. Wright, Salt Lake City, for plaintiff.

Floyd G. Astin, K. Allan Zabel, Salt Lake City, for defendant.

STEWART, Justice:

Vali Convalescent & Care Institution (hereinafter "Vali") appeals the decision of the Board of Review of the Industrial Commission of Utah (hereinafter "Commission") by increasing Vali's unemployment compensation contribution rate for failure to file a timely quarterly report and payment. Vali contends that it was denied due process because the contribution rate was increased prior to a proper hearing. It also argues that because the subsequent hearings were presided over by the Commission's employees pursuant to Utah Code Ann., 1953, § 35–4–10, Vali was unconstitutionally deprived of the impartiality required by due process.

Vali failed to submit an employer's quarterly contribution report for the fourth quarter of 1978 by January 31, 1979, the final due date. Its president, Richard A. Brown, participated in compiling and submitting Vali's contribution reports to the Commission and was aware that they were due quarterly.

In January, 1979, Brown became aware that Vali had not received or submitted the employer's quarterly contribution report from the Commission. He called the Commission's Salt Lake office and requested that forms be sent to him. When the forms were not forthcoming, he called again and repeated his request for the forms, but none arrived. In February, 1979, two delinquency notices were sent to Vali. Each of these notices stated:

IMPORTANT

SAVE MONEY BY FILING DELINQUENT REPORTS BY FEBRUARY 15, 1979

Utah Employment Security Act provides that an employer who fails to (1) file all delinquent contribution reports on or before February 15, 1979, and (2) pay all contributions owing thereon by March 31, 1979, will not be eligible for a reduced rate for the year of 1979.

If you fail to meet the above requirements, even though you may otherwise be eligible for a reduced rate, you must pay a contribution rate of .030 for the entire contribution year of 1979.

Brown acknowledges receiving both delinquency notices and claims he returned at least one of the notices to the Commission, asking once again that forms be sent to him. The forms did not arrive, and there was no contact between the parties until March 6, 1979, when John W. Smith, a field advisor for the Commission, called Vali's offices to talk to Brown about an unrelated matter. Brown was out of the office and after several days of missed phone calls and messages between Smith and Brown, Smith again visited Vali's offices and mentioned the delinquent contribution report. Sometime later, Vali received a contribution report form from the Commission and returned it with a check on March 23, 1979. Along with the report and payment, Vali submitted a request for a waiver of penalty and interest for late filing.

The Commission responded to Vali's request to waive the penalty and interest by a letter dated April 5, 1979. In accordance with Utah Code Ann., 1953, § 35–4–17(a)(1) and (2), the Commission indicated that a waiver request can only be granted for reasonable cause but not for willful neglect, and that the Commission did not have the authority to waive interest on contributions unpaid on the due date. The letter made no reference to the increased contribution rate to be assessed for 1979, but addressed only the interest and fine imposed because of the late filing for the fourth quarter report.

By a letter dated May 15, 1979, the Commission's chief of contributions notified Vali that it had failed to demonstrate that the late filing of the fourth quarter report was justified by reasonable cause and therefore the penalty prescribed by § 35–4–17(a)(2) could not be waived. This letter also notified Vali of the increase in its rate of contribution from 1.3% to 3% of the total payroll for the calendar year of 1979 by reason of its failure to file all contribution reports by the February 15, 1979 cut-off date. Utah Code Ann., 1953, § 35–4–7(c)(1)(C).

Vali appealed the contribution rate increase to the Commission's appeals referee and from the referee's adverse ruling to the Board of Review, as provided in § 35–4–10. The Board of Review affirmed the referee's position that the consequences of filing beyond the prescribed cut-off date was an automatic increase in the rate whether or not good cause is shown for failing to comply.

Vali appealed the decision of the Commission's Board of Review to this Court. The Commission, after the Board's decision, but before this Court disposed of the appeal, changed its policy to allow an extension for good cause to extend the time for filing reports beyond the cut-off date. Accordingly, this Court remanded the case for additional proceedings. *Vali Convalescent & Care Institution v. Industrial Commission*, Utah, 620 P.2d 74 (1980).

A hearing before the appeals referee was held March 17, 1981. A decision issued March 26, 1981 that Vali had not demonstrated good cause for its failure to file its fourth quarter report by the cut-off date of February 15, 1979. An appeal was then taken to the Board of Review, which affirmed the referee's decision on June 12, 1981. From that decision, Vali filed a writ of review in this Court.

Vali first contends that it was denied due process under both the Fourteenth Amendment of the United States Constitution and Art. 1, § 7 of the Utah Constitution because its contribution rate under § 35–4–7 was increased without a prior hearing.

This Court has held that decisions relating to the Fifth and Fourteenth Amendments of the United States Constitution are highly persuasive when interpreting the

due process clause of the Utah Constitution. *Untermyer v. State Tax Commission*, 102 Utah 214, 129 P.2d 881 (1942).

■ Federal due process does not require a mandatory hearing in all cases prior to an administrative action. Nor does due process necessarily require a hearing at any particular point in an administrative proceeding as long as the requisite hearing is held before the final order becomes effective. *Inland Empire District Council v. Millis*, 325 U.S. 697, 65 S.Ct. 1316, 89 L.Ed. 1877 (1945); *Opp Cotton Mills v. Administrator*, 312 U.S. 126, 61 S.Ct. 524, 85 L.Ed. 624 (1940). "[S]ome governmental benefits may be administratively terminated without affording the recipient a pre-termination evidentiary hearing." *Goldberg v. Kelly*, 397 U.S. 254, 263, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970). See *R. A. Holman & Co. v. SEC*, 299 F.2d 127 (D.C.Cir.1962), cert. denied, 370 U.S. 911, 82 S.Ct. 1257, 8 L.Ed.2d 404 (1962) (suspension of exemption from stock registration requirement).

It is hornbrook law that there is no violation of due process in making an administrative determination without a hearing if a hearing may be had on application to an administrative tribunal for reconsideration or review; whether by trial de novo or for the correction of errors; or in a proceeding to suspend or set aside the order. *Gonzales v. United States* (1960), 364 U.S. 59, 80 S.Ct. 1554, 4 L.Ed.2d 1569; 2 Am.Jur.2d Administrative Law § 406.

*Continental Oil Co. v. Board of Labor Appeals*, 178 Mont. 143, 158, 582 P.2d 1236, 1245 (1978). Cf. *Thatcher v. Industrial Commission*, 115 Utah 568, 207 P.2d 178 (1949).

■ Vali was afforded a hearing before the Industrial Commission's appeal referee which took evidence and rendered a decision adverse to Vali. Vali then appealed the decision to the Commission's Board of Review, which upheld the referee's decision. The appeal to this Court provided Vali with its third formal review of the matter. Although the hearings occurred subsequent to the imposition of the increased contribution

rate, these hearings gave Vali adequate opportunity to present its case.

Vali suffered no harm because of the imposition of the increased contribution rate prior to a hearing. Because the increased contribution rate is still being contested, it has not yet become final and Vali has not paid the Commission any of the increased rate to date. Even if the penalties had actually been paid, the harm to Vali could easily be remedied by a return of those monies. The imposition of the increased contribution rate by the Commission, therefore, did not violate Vali's due process rights because it has had adequate opportunity to be heard and because it has not been injured by the assessment of the increased rate prior to an evidentiary hearing.

■ Vali further claims that the absence of a prior hearing unlawfully shifted the burden of proof to Vali to avoid the penalty, whereas the Commission should have the burden to justify the penalty. We find no merit in Vali's position. Section 35–4–17(a)(2) authorizes a penalty and interest to be assessed against all employers who pay their contributions late except when "it is shown to the satisfaction of the commission ... that the failure to file was due to a reasonable cause and not to willful neglect ...." The failure to perform the routine obligations of paying timely justifies imposition of a penalty unless an adequate excuse can be shown, and it is perforce the employer who has the knowledge and evidence of a valid excuse, not the Commission. The law frequently and justifiably places the burden of proof on a party having access to the necessary evidence. There is no constitutional defect in requiring an employer to assume that burden of providing proof of reasonable cause for his delinquency.

Vali also contends that it was denied due process because the hearings were conducted before employees of the Commission, and those employees made determinations as to the merits of the case. "A fair trial in a fair tribunal is a basic requirement of due

process." *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). "It has also become the prevailing view that '[m]ost of the law concerning disqualification because of interest applies with equal flow to ... administrative adjudicators.'" *Gibson v. Berryhill*, 411 U.S. 564, 579, 93 S.Ct. 1689, 1698, 36 L.Ed.2d 488 (1973) (quoting in part K. Davis, Administrative Law Text § 12.04 (1972)). A biased decision maker is not only constitutionally prohibited, "[b]ut our system of law has always endeavored to prevent even the probability of unfairness." *In re Murchison*, 349 U.S. at 136, 75 S.Ct. at 625.

█ In administrative proceedings, the practice of an agency acting as prosecutor and judge is not unconstitutional, at least if those functions, with respect to discretionary matters, are kept separate within the agency. "[M]any agencies have functioned for years, with the approval of the courts, which combine these roles." *Brinkley v. Hassig*, 83 F.2d 351, 357 (10th Cir. 1936). See also K. Davis, Administrative Law Treatise § 18.2 (2d.ed.1980).

█ Vali cites *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), *Ward v. Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972), and *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), to support its claim that the Commission was biased in its decision making process. In *Tumey*, the Court overturned a criminal conviction in a mayor's court because the mayor received a fee in addition to his regular salary only when the defendants were convicted. The court stated:

> Every procedure which would offer a possible temptation to the average man as a judge to forget the burden of proof required to convict the defendant, or which might lead him not to hold the balance nice, clear, and true between the State and the accused, denies the latter due process of law.

*Id.* 273 U.S. at 532, 47 S.Ct. at 444.

The Court applied the principle of *Tumey* in *Ward v. Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972), and held the defendant's due process rights were violated in a mayor's court adjudication when that court produced a substantial portion of the municipality's revenues. Although the mayor's salary was not fixed to the sums he collected, the court found that his "responsibilities for village finances may make him partisan to maintain the high level of contribution from the mayor's court." *Id.* at 60, 93 S.Ct. at 83.

In *Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), the Court held the pecuniary interest of licensed optometrists sitting as the Alabama Board of Optometry violated due process in revoking licenses of fellow optometrists with whom they apparently were in competition. The pecuniary interest of the members of the Board of Optometry, although not as direct or positive as appeared in *Tumey*, was, nevertheless, of sufficient substance to disqualify the Board members from acting.

The case at bar, however, is distinguishable from these cases and is controlled by the principle laid down in *Dugan v. Ohio*, 277 U.S. 61, 48 S.Ct. 439, 72 L.Ed. 784 (1928). In *Dugan*, the Court upheld a mayor's court ruling in a criminal case where the mayor had very little executive authority. The City of Xenia, Ohio was governed by a five member commission, including the mayor, which exercised all legislative powers. The city manager, along with the city council, exercised the executive powers. The Court held that the mayor's relationship to the city's finances was too remote to produce bias in favor of conviction. See also *Woldberg v. Industrial Commission*, 74 Utah 309, 279 P. 609 (1929) holding that since members of the Commission have no financial interest in the outcome of their decisions, the Industrial Commission was not disqualified in making awards against or in favor of the State Insurance Fund.

In this case the Commission's employees are not directly responsible for the financial condition of the Commission. The Legislature establishes the contribution rates to ensure the unemployment insurance fund's security. The Commission's investigative and prosecutorial functions are not initiated

until a contributor fails to pay. The Commission members' salaries are not affected by their judicial decisions and they have no pecuniary reason to penalize delinquent contributors. Although, pursuant to § 35–4–15, the Commission is responsible for the administration of the Special Administrative Expense Fund where all interest and penalties are deposited, this interest is too remote to establish any reasonable likelihood of bias.

Affirmed. No costs.

HALL, C. J., and OAKS, HOWE and DURHAM, JJ., concur.