Jacqueline S. HIGGINS, widow, and Ronald S. Higgins, a minor child of David Harold Higgins, deceased, Plaintiffs,

v.

INDUSTRIAL COMMISSION of Utah, J.F. Shea Company, Inc. and Employers Insurance of Wausau, Defendants.

No. 20218.

Supreme Court of Utah.

May 17, 1985.

---

David S. Kunz, Ogden, Paul Richards Howell, Salt Lake City, for plaintiffs.

David L. Wilkinson, Atty. Gen., Robert W. Brandt, Salt Lake City, for defendants.

STEWART, Justice:

Jacqueline and Ronald Higgins, claimants and plaintiffs below, sought workmen's compensation benefits for the death of their husband and father, David Higgins. The Industrial Commission denied benefits. We affirm.

In 1982, David Higgins worked as a lubrication engineer for defendant J.F. Shea Company at its Currant Creek Dam project near Heber City, Utah. Higgins worked first from April until June, and after leaving to work for another company for about five months, he returned to work for J.F. Shea on November 8, 1982. Higgins arrived at the jobsite at 4:00 p.m. Near the end of his shift, a little before midnight, he slipped on a grease hose and injured his right shoulder. Witnesses disagreed on whether the shoulder was dislocated or merely sprained. The company nurse ad-

ministered first aid to Higgins' shoulder by massaging it, after which, Higgins was able to raise his arm to a ninety degree angle without pain.

At about 1:00 a.m., Higgins left the jobsite alone by car for his home in West Jordan. At that time it was snowing, visibility was less than 200 feet, about 12 inches of snow had fallen since 4:30, and the roads were icy. The first 18 miles of road from the jobsite is a mountain road with many curves, some of them hairpin curves. The next stretch of road, U.S. Highway 40, curves much less and had about three inches of snow on it when Higgins left.

Higgins did not return home at the expected time. On November 10th, he was found off Highway 40, about 72 miles from the jobsite, dead from hypothermia. At a gentle curve in the road, his car apparently had continued in a straight line, gone over the embankment and stopped in some high sage brush. The left door of his car was found open, the ignition on, and the gas tank empty. Higgins was lying face down near the right rear wheel, his body frozen. An autopsy revealed that Higgins had suffered a fracture and dislocation of both shoulders and subdural hemorrhaging in both shoulders.

The claimants applied for death benefits, which the administrative law judge denied. Based on detailed findings, the administrative law judge ruled that the claimants failed to prove that Higgins' shoulder injury "was *the* cause of his [leaving the road] and his ensuing death by hypothermia." (Emphasis added). Claimants petitioned for review, and the case was submitted to a medical panel. The panel found that the industrial injury had merely sprained, not dislocated, Higgins' shoulder, and that although Higgins' full range of motion was limited when he left the jobsite, he had sufficient range to shift gears and steer.

The administrative law judge amended his previous findings by including the medical panel report, and again denied death benefits on the ground that claimants have "failed to sustain by a preponderance of the evidence that the injury to the decedent's right shoulder sustained during the course of his employment ... was *a* cause of his subsequently leaving the road ... and his ensuing death by hypothermia." (Emphasis added.) On the basis of the administrative law judge's findings and conclusions, the Industrial Commission denied review. On petition for review to this Court, the claimants challenge the Commission's finding that the decedent's industrial right shoulder injury was not a cause of his death.

Our standard for review of the Industrial Commission's findings of fact in workmen's compensation cases is well-settled. We are limited to determining whether the Commission's findings are supported by substantial evidence. *Kennecott Corp. v. Industrial Commission*, Utah, 675 P.2d 1187, 1192 (1983); *Kent v. Industrial Commission*, 89 Utah 381, 385, 57 P.2d 724, 725 (1936).

■ The governing statute in this case is U.C.A., 1953, section 35-1-45, which provides for compensation or death benefits if an employee is injured or killed "by accident arising out of or in the course of his employment." Under this section, the claimant must prove that the work-related event was a contributing cause of the injury. *Schmidt v. Industrial Commission*, Utah, 617 P.2d 693, 695 (1980); *Maher v. Workers Compensation Appeals Board*, 33 Cal.3d 729, 190 Cal.Rptr. 904, 661 P.2d 1058, 1063 (1983); *McAllister v. Workmen's Compensation Appeals Board*, 69 Cal.2d 408, 71 Cal.Rptr. 697, 445 P.2d 313, 317-19 (1968). A contributing cause in workmen's compensation law is different from, and broader than, the concept of proximate cause, in tort law.

■ Although there is some basis for a different view of the evidence, there is substantial evidence in support of the Commission's finding that the decedent's right shoulder injury, which occurred on the job, did not contribute to the decedent's leaving the road and his ensuing death by hypothermia. After decedent's shoulder was mas-

saged, he was able to dress himself, except for putting on a sweater; he could elevate his arm to a ninety degree angle; and he successfully drove the first eighteen miles of winding, mountain road from the jobsite. The claimant's theory that the injury caused a loss of blood that eventually led to his loss of consciousness and to the fatal accident, has some plausibility. However, the Commission's findings that the industrial right shoulder injury was not a dislocated fracture or a sprain or simple dislocation that would have caused internal hemorrhaging in the right shoulder is not capricious.

Claimants also argue that decedent's injury required him to drive home for treatment in adverse weather conditions, and that therefore the "positional risk" doctrine satisfies the causality requirement. This argument fails because the claimants fail to demonstrate that the "positional risk" doctrine applies to this case.

As a general rule, an employee is not deemed to be within the course of his employment for workmen's compensation purposes when he furnishes his own transportation and is injured while going to or coming from his place of employment. *E.g., State Tax Commission v. Industrial Commission*, 29 Utah 2d 179, 685 P.2d 1051, 1053 (1984); *Barney v. Industrial Commission*, 29 Utah 2d 179, 506 P.2d 1271, 1272 (1973); *Bailey v. Industrial Commission*, 16 Utah 2d 208, 398 P.2d 545 (1965). An exception to this general rule exists where ingress or egress at a place of employment is inherently dangerous and results in an employee injury. *Bountiful Brick Co. v. Industrial Commission*, 68 Utah 600, 604, 251 P. 555, 556 (1926); *Cudahy Packing Co. v. Industrial Commission*, 60 Utah 161, 167, 207 P. 148, 150–51 (1922). The claimants refer to this exception as the "positional risk" doctrine. However, ingress or egress to the place of employment in this case was not inherently dangerous.

This case is governed by the general "going and coming" rule. The right shoulder injury did not cause the decedent to leave work at a different time or take a different route than he ordinarily would have. He left shortly after the end of his shift, and was driving to his home in West Jordan. Since his accident was over seventy miles from the jobsite, the exception established in *Bountiful Brick Co.* and *Cudahy Packing Co.* does not apply.

Affirmed.

HALL, C.J., and HOWE, DURHAM and ZIMMERMAN, JJ., concur.