**Irwin G. BUNNELL, Plaintiff,**

v.

**The INDUSTRIAL COMMISSION OF UTAH, United States Steel Corporation/Geneva, and the Second Injury Fund, Defendants.**

No. 860196.

Supreme Court of Utah.

July 28, 1987.

Bruce J. Wilson, Provo, for Irwin Bunnell.

Phil N. Walker, San Francisco, Cal., Lana Jensen, Provo, for U.S. Steel Corp./Geneva.

David L. Wilkinson, Ralph L. Finlayson, Salt Lake City, for The Indus. Comn.

Erie V. Boorman, Salt Lake City, for Second Injury Fund.

DURHAM, Justice:

Plaintiff appeals from a decision of the Industrial Commission that affirmed without comment an administrative law judge's dismissal of plaintiff's claim for total disability benefits. Plaintiff claims that he was denied due process of law by the manner in which the administrative law judge conducted the hearing and that the administrative law judge's conclusions were internally inconsistent and against the substantial, competent, and uncontradicted evidence presented by plaintiff. We agree with plaintiff's first claim; we reverse and remand for rehearing before another administrative law judge.

Plaintiff suffered serious injuries in 1953 while employed as a carpenter by Geneva Steel. When the accident occurred, plaintiff was standing on a catwalk directing the erection of arches to support a roof over one of the open hearth furnaces. An arch carried by a crane struck plaintiff and he lost his footing on the catwalk. Plaintiff fell about fifteen feet to the floor of the red-hot furnace, where he lay until co-workers reached him thirty to fifty seconds later. He was taken to the Geneva dispensary and then to a hospital where he regained consciousness five days later. Plaintiff's injuries were grievous: he fractured his left wrist and several fingers on that hand, fractured his right leg, fractured five ribs on his right side, suffered a depressed skull fracture, and was burned. In 1955, plaintiff received an award of $866.25, which represented a 15 percent permanent partial disability. Plaintiff, who was fifty at the time of the accident, eventually returned to full-time employment at Geneva and retired in 1968. He brought this claim in 1985 alleging that the respiratory problems he had suffered from the time of the accident to the present were attributable to damage he sustained when the superheated air he breathed while lying on the furnace floor scorched his lungs. Plaintiff presented evidence indicating that prior to the accident he had had no lung problems as an adult, but immediately after the accident he developed a chronic "smoker's cough," although he had never smoked.

After the accident, plaintiff had to drastically reduce his physical activities and suffered frequently from pneumonia for which he was hospitalized several times. Plaintiff received treatment for lung ailments from 1968 to the present. He presented evidence of several tentative diagnoses, including epilepsy and emphysema, that had been made over the years. All of these diagnoses were rejected after further examination and treatment. Plaintiff also submitted a statement by a doctor specializing in pulmonary medicine, who examined plaintiff in 1985 and concluded that he suffered from severe obstructive pulmonary disease for which there was no clear precipitating cause. The statement said that the doctor believed the accident was a contributing factor in plaintiff's condition.

■ It is true that there have been cases in which the claimant has presented more compelling evidence. However, every person who brings a claim in a court or at a hearing held before an administrative agency has a due process right to receive a fair trial in front of a fair tribunal. *Anderson v. Industrial Commission*, 696 P.2d 1219, 1221 (Utah 1985). "Fairness requires not only an absence of actual bias, but endeavors to prevent even the possibility of unfairness." *Id.* at 1221.[1] In reviewing the Commission's rulings on constitutional challenges, this Court applies a correction-of-error standard with no deference to the Commission's expertise. *Utah Department of Administrative Services v. Public Service Commission*, 658 P.2d 601, 608 (Utah 1983). Our review of the record persuades us that the manner in which the administrative law judge conducted this hearing was sufficiently unfair as to constitute a denial of plaintiff's constitutional right to a fair hearing.

The manner in which the judge conducted the hearing below was unacceptable for several reasons: the administrative law judge insisted on strict application of the hearsay rule although that rule does not apply in administrative hearings; the record reflects an atmosphere in which plaintiff's witnesses were inhibited and intimidated by the judge's conduct, and felt defensive and hesitant to testify; the judge interfered with plaintiff's counsel's ability to make a record and argue the evidence; and the judge gave the appearance of having decided the case without even considering the medical records. The dissent minimizes this behavior as "impatience" and a lack of "temperate neutrality." We think the record reflects a far more serious systematic failure to conduct a fair hearing.

■ Plaintiff attempted to offer the statements of treating physicians (now unavailable as witnesses) concerning the damage caused by the accident, but the administrative law judge rejected the statements as hearsay. There was no reason for the rejection of the statements on that basis. Utah Code Ann. § 35–1–88 (1974) reads: "Neither the commission nor its hearing officers shall be bound by the usual common-law or statutory rules of evidence." *See also* Utah R.Evid. 1101 (Rules of Evidence apply to all actions and proceedings in *courts* with certain enumerated exceptions). We have repeatedly held that the hearsay rule does not apply in administrative hearings. *See, e.g., Schmidt v. Industrial Commission*, 617 P.2d 693, 696 (Utah 1980); *Gardner v. Edward Gardner Plumbing & Heating*, 693 P.2d 678, 681–82 (Utah 1984). An administrative law judge must be guided by fairness in determining what evidence to accept and what to hold inadmissible. All that is necessary is that admitted evidence have some probative weight and reliability. *Trotta v. Department of Employment Security*, 664 P.2d 1195, 1198 (Utah 1983).

In this case for no proper reason, the administrative law judge rejected plaintiff's wife's testimony concerning statements made by physicians treating her husband. We have examined the medical records available to the administrative law judge and think it unfair to the point of error for the judge to have rejected hearsay supplementation of those records. Many of the records concerning the 1953 accident remained in the control of Geneva Steel. The records are self-contradictory and obviously incomplete. For example, one medical record summary prepared by one of Geneva's doctors for consideration by the industrial panel in 1955 placed the broken ribs on

---

1. The dissent derides this principle as a "general hortatory statement" and says that *Anderson* is not helpful in the resolution of this case. We disagree. We do not think that due process requires procedures that endeavor to avoid the appearance of unfairness only in cases in which the judge also acted as counsel for one of the parties (the situation in *Anderson*); rather, we think that due process demands a new trial when the appearance of unfairness is so plain that we are left with the abiding impression that a reasonable person would find the hearing unfair. It is perhaps instructive that the administrative law judge whose conduct was in question in *Anderson* was also the judge in this case. We fear the reasoning employed by the dissent will encourage the impression that our decisions are merely "hortatory" and will not be enforced.

plaintiff's left rather than right side, the progress notes chronicling plaintiff's fifteen-day hospitalization contain only three entries, and the doctor's order sheet from the same hospitalization is suspiciously brief and refers cryptically to "verbal" orders without further clarification. The administrative law judge improperly refused to admit the testimony of plaintiff's wife as that testimony was highly probative in light of the condition of the medical records.

 We also comment with concern on the atmosphere created by the administrative law judge. Although the record cannot fully capture the demeanor of the administrative law judge, it does capture his comments and the verbal reactions of the witnesses to him. The administrative law judge sustained objections made by the employer's counsel without allowing plaintiff's counsel to proffer the disputed testimony on the record. This prevented a meaningful consideration of the testimony proffered by the administrative law judge and by this Court. For example, the following exchange occurred after plaintiff's wife attempted to explain why she had to stay in the hospital with her husband immediately after the accident.

> Plaintiff's counsel: What is your understanding of why you stayed in the hospital?
> A: He was unconscious. And, one of his last words, Dr. Linden said that he—
> Employer's Counsel: I'm going to object.
> The Court: Sustained. The records speak for themselves, Counsel.
> Plaintiff's Counsel: Your Honor, one of our—
> The Court: Don't persist in this. Off the record.
> The Court: I'll let you make a record on it, Counsel. You go right ahead. But you have been warned. But if you want to waste the Court's time with it, go right ahead.

The administrative law judge then granted employer's counsel a "continuing objection," although to what is unclear. The administrative law judge's attitude seems to have chilled the witnesses. The plaintiff's wife frequently incorporated in her responses statements like "I don't know whether this would be allowed in the record or not," "[a]m I out of line," and "[t]hat's bad for the record, but it's the truth." Further, the witness seems to have restricted her testimony to matters that she thought the administrative law judge would find acceptable after she had been told by her counsel that she could not tell what a treating physician had said.

The administrative law judge was also intolerant of counsel's argument on behalf of plaintiff. He refused to listen to closing argument. More shockingly, when plaintiff's counsel offered argument assessing the evidence before the admission of the medical records on which the administrative law judge purportedly made his decision, the administrative law judge told plaintiff's counsel to save the argument for rehearing, indicating that he had already decided to hold against plaintiff without even examining the medical records.

In short, the administrative law judge's conduct so far diverged from that which would be expected from an impartial judge that we agree with plaintiff that his right to due process was violated.

Reversed and remanded.

STEWART, Associate C.J., and HOWE, J., concur.

ZIMMERMAN, Justice (dissenting):

I agree with the majority that the administrative law judge plainly erred in excluding evidence in reliance on the hearsay rule. We have held explicitly that a strict application of the rules of evidence is inappropriate in such hearings. *E.g., Gardner v. Edward Gardner Plumbing & Heating, Inc.,* 693 P.2d 678, 681–82 (Utah 1984). I also think the testimony excluded was relevant to the issues put before him. However, I cannot conclude that the erroneous exclusion of the evidence was harmful.

There was ample evidence before the administrative law judge to support his ruling that plaintiff had failed to show a causal connection between the accident and the lung problems. *See, e.g., Higgins v. Indus-*

*trial Commission,* 700 P.2d 704, 706 (Utah 1985); *Hardman v. Salt Lake City Fleet Management,* 725 P.2d 1323 (Utah 1986). It is not for this Court to redetermine the weight of the evidence and the credibility of the witnesses. *E.g., Staker v. Industrial Commission,* 61 Utah 11, 16, 209 P. 880, 882 (1922). Given the decision of the administrative law judge on the conflicting evidence, I cannot say that had the erroneously excluded evidence been admitted, it would have raised a substantial likelihood of an outcome more favorable to the claimant. *Mattingly v. Charnes,* 700 P.2d 927, 929 (Colo.App.1985) (administrative agency's decision will not be reversed unless substantial rights of the party are prejudiced); *In re Certificate of Need Application,* 234 Kan. 802, 805–06, 676 P.2d 107, 110 (1984) (administrative agency's error which does not prejudice substantial rights of the party will not be reversed); *see also Gardner v. Edward Gardner Plumbing & Heating, Inc.,* 693 P.2d at 682 (administrative law judge's exclusion of testimony justified remand when the judge effectively precluded plaintiff from meeting the evidence against him); *cf. State v. Hackford,* 56 Utah Adv.Rep. 9, 11 n. 1 (April 22, 1987); *see State v. Knight,* 734 P.2d 913, 919–21 (Utah 1987) (standard of review defined); Utah R.Evid. 103; Utah R.Civ.P. 61; Utah R.Crim.P. 30; Utah Code Ann. § 77–35–30 (1982). Therefore, I would affirm on the causation issue.[1]

As for the majority's holding that the proceedings before the administrative law judge were conducted in a manner that made them so unfair as to deny the claimant due process of law under article I, section 7 of the Utah Constitution, I dissent. Certainly, the administrative law judge erred in excluding the hearsay evidence. To my knowledge, erroneous rulings alone are not sufficient to show the bias or prejudice required to disqualify a judge. *State ex rel. Miller v. Richardson,* 229 Kan. 234, 238, 623 P.2d 1317, 1322 (1981) (construing state statutory law); *see* Code of Judicial Conduct Canon 3, § C.

In the present action, the administrative law judge did more than rule erroneously. He also displayed impatience with the claimant's witnesses and did not manifest the temperate neutrality that I would hope is the general rule in trial courts and administrative tribunals. However, I cannot agree that his divergence from good practice was so extreme or affected the proceedings so profoundly that we can say that the claimant was denied due process under the state constitution.

The majority cites *Anderson v. Industrial Commission,* 696 P.2d 1219, 1221 (Utah 1985), as authority for the proposition that "[f]airness requires not only an absence of actual bias, but endeavors to prevent even the possibility of unfairness." This general hortatory statement is correct. However, it does not assist in deciding the present case. In *Anderson,* we held that principles of fairness required that an administrative law judge be disqualified from a case when he or she previously had appeared as an attorney for one side. The statute we applied in reaching this conclusion does not require any showing of actual prejudice, but mandates automatic disqualification when a judge has acted as an attorney for either party in the action. Utah Code Ann. § 78–7–1(3) (1977). We saw no reason why this statutory requirement should not be extended under the banner of due process to administrative law judges.

That ruling has no application in the present action. Moreover, there is no state statute, rule, or provision of the Code of Judicial Conduct that condemns what occurred here. The closest provision is that which requires that judges must disqualify themselves when they are actually biased or prejudiced against a party or an attorney. *See* Utah R.Civ.P. 63(b). Due process most certainly requires that a similar rule apply in an administrative setting. *See, e.g., Vali Convalescent & Care Institution v. Industrial Commission,* 649 P.2d 33, 36–37 (Utah 1982). However, the present facts do not rise to that level.

---

1. Apparently the majority agrees that the evidentiary ruling alone does not warrant reversal, since it reaches for the constitutional argument as a foundation for overturning the result below.

Here, the administrative law judge did not act as patiently or courteously to the litigants as he should have acted. *See* Code of Judicial Conduct Canon 3, § A(3). His conduct, however, did not display disqualifiable bias or prejudice or deny the claimant due process. *See State v. Logan,* 236 Kan. 79, 86–88, 689 P.2d 778, 784–85 (1984); *Davidson v. Oregon Government Ethics Committee,* 300 Or. 415, 427–29, 712 P.2d 87, 95–97 (1985).

I think the majority should be cautious lest the grounds that are used today to overturn this proceeding in the name of fairness become a standard attack upon administrative or judicial rulings whenever some basis can be found in the record for arguing that the judge's behavior was less than ideal on any given day.

HALL, C.J., concurs in the dissenting opinion of ZIMMERMAN, J.

