**Ralph TOLMAN, Petitioner and Appellant,**

v.

**SALT LAKE COUNTY ATTORNEY, Respondent and Appellee.**

**No. 900112–CA.**

Court of Appeals of Utah.

Sept. 6, 1991.

---

L. Zane Gill (argued) L. Zane Gill, P.C., Salt Lake City, for petitioner and appellant.

Jerry G. Campbell (argued) Deputy County Atty., Salt Lake City, for respondent and appellee.

Before BENCH, JACKSON and RUSSON, JJ.

BENCH, Presiding Judge:

Appellant, Ralph Tolman, seeks reversal of an administrative decision by the Salt Lake County Career Services Council (CSC). The CSC upheld the termination of Tolman's job as an investigator for the Salt Lake County Attorney's Office (CAO). Tolman petitioned the district court for an extraordinary writ under Rule 65B of the Utah Rules of Civil Procedure. The district court refused to grant Tolman any relief from the CSC's decision. We conclude that Tolman is entitled to a new hearing and therefore vacate the district court's order denying relief.

In September 1986, then-county attorney Ted Cannon sent Tolman a letter informing him that his employment as an investigator for the CAO would be terminated because of "continuing misconduct and acts inimical to public service." Tolman appealed the termination to the CSC. The CSC upheld the termination, finding that the alleged misconduct did in fact occur and that termination was therefore warranted. The CSC relied upon six events of misconduct by Tolman in making its decision, but only one of those events is directly relevant to our discussion.

The CSC found that on June 10, 1986, Tolman, while off-duty, assaulted and battered his ex-girlfriend and a male acquaintance after finding them naked in her hot tub. The CSC also found that on June 11, 1986, while on his way to work, Tolman stopped again at his ex-girlfriend's house and again battered the male acquaintance who had stayed the night. The CSC concluded that in regards to this series of events, Tolman "used poor judgment and that his actions constituted acts inimical to public service." [1]

1. Tolman introduced into evidence before the district court a memorandum from counsel for the CAO which had been written before Tolman's dismissal. The memorandum advised Tolman's supervisors that a dismissal of Tolman would likely not be upheld by the CSC for various legal reasons. Tolman was nevertheless dismissed. When Tolman sought to admit the memorandum into evidence before the district court, counsel for the CAO asserted that his conclusions in the memorandum were altered by the subsequent discovery of the June 11th incident with the male acquaintance. That discovery, which occurred after Tolman was dismissed, was enough in counsel's mind to tip the scales in favor of dismissal. We note, however, that the June 11th incident was irrelevant to whether Tolman's dismissal was based upon sufficient cause. If the CAO did not know about the June 11th incident at the time of Tolman's termination, the June 11th incident could not possibly have been a factor in the decision to dismiss Tolman.

The CSC held that "(1) the allegations against Ralph Tolman by the Salt Lake County Attorney's Office were not only supported by the facts but that they were not controverted; [and] (2) the action taken, the termination of Ralph Tolman, was warranted." Tolman sought relief from the CSC decision by petitioning the district court for an extraordinary writ pursuant to Rule 65B.[2] The district court held that the CSC did not exceed its jurisdiction or abuse its discretion and therefore upheld the termination by refusing to grant Tolman any relief. Tolman appeals the district court's denial of relief.

## STANDARD OF REVIEW
### Rule 65B

■ The procedural posture of this case presents an unusual standard of review.[3] Under Rule 65B, this court looks at the administrative proceeding as if the petition were brought here directly, even though technically it is the district court's decision that is being appealed. *Erkman v. Civil Service Comm'n*, 114 Utah 228, 198 P.2d 238, 240 (1948). Since the review performed by the district court under Rule 65B is a review of the entire record, it is the same review that would have been afforded if the matter were raised as a direct appeal. *In re: Discharge of Jones*, 720 P.2d 1356, 1360 (Utah 1986). We give no deference to the district court's initial appellate review since it was a review of the record, which this court is just as capable of reviewing as the district court. *Bennion v. State Bd. of Oil, Gas & Mining*, 675 P.2d 1135, 1139 (Utah 1983); *Vali Convalescent & Care Insts. v. Division of Health Care Financing*, 797 P.2d 438, 443 (Utah App.1990); *Davis County v. Clearfield City*, 756 P.2d 704, 710 (Utah App.1988). We therefore review the CSC's actions directly. No claim has been made by Tolman that the CSC exceeded its jurisdiction, we therefore review its actions for an abuse of discretion.

### Abuse of Discretion

Discretion "encompass[es] the power of choice among several courses of action, each of which is considered permissible...." R. Aldisert, *The Judicial Process* 759 (1976). Tribunals may exercise discretion in many matters where there are no hard and fast rules of law and the tribunal is in an advantaged position to make the correct decision. Discretion, however, "is limited in that it must be exercised within the confines of the legal standards set by appellate courts...." *Maughan v. Maughan*, 770 P.2d 156, 159 (Utah App.1989). Discretion may also be confined by statute. *See Williams v. Mountain States Tel. & Tel. Co.*, 763 P.2d 796, 800 (Utah 1988) (statute does not "eliminate the Commission's power," it "establishes the perimeters within which the PSC may properly exercise its expertise, authority, and jurisdiction"). Discretion may best be viewed as an arena bounded by the law, within which the tribunal may exercise its judgment as it sees fit.

By an "abuse of discretion" ... "is meant a clearly erroneous conclusion and judgment—one that is clearly against the logic and the effect of such facts as are presented in support of the application, or against the reasonable and probable deductions to be drawn from the facts disclosed upon the hearing." It does not imply intentional wrong or bad faith or misconduct, nor any reflection on the judge. It is a legal term to indicate that the appellate court is of the opinion that there was commission of error of law in

---

2. Rule 65B provides, in part:

   Where no other plain, speedy and adequate remedy exists, relief may be obtained by appropriate action under these rules, on any one of the [following] grounds....

   ....

   (2) where an inferior tribunal, board or officer exercising judicial functions has exceeded its jurisdiction or abused its discretion.

3. Contrary to Tolman's assertions, this case is not governed by the Utah Administrative Procedures Act (UAPA), Utah Code Ann. §§ 63–46b–1 to –22 (1989). UAPA applies only to administrative actions of state agencies and does not apply to local administrative bodies such as the CSC. Section 63–46b–2(1)(b). *See Davis County v. Clearfield City*, 756 P.2d 704, 706–07 (Utah App. 1988).

the circumstances. It is an improvident exercise of discretion; an error of law. *State v. Draper*, 83 Utah 115, 143, 27 P.2d 39, 49–50 (1933) (quoting *Starr v. State*, 5 Okl.Cr. 440, 115 P. 356, 363 (1911); citations omitted).

A claim that a tribunal has "abused its discretion" may more accurately be framed as a claim that the tribunal has "misused" or "exceeded" its discretion. An abuse of discretion, therefore, is an act by a tribunal, not a standard of review in and of itself. A reviewing court discovers such acts by applying varying standards of review depending upon the error alleged. For example, if an alleged error involves a tribunal's factual findings, a determination clearly within the arena of the tribunal's discretion due to its advantaged position to hear and see the evidence firsthand, we review the tribunal's factual finding using a clearly erroneous standard, giving great deference to the tribunal's findings. *See* Utah R.Civ.Proc. 52(a). If an alleged error involves other decisions that are traditionally left to the discretion of a tribunal, we will not disturb the tribunal's determination unless it is "arbitrary, capricious, or unreasonable." *Child v. Salt Lake City Civil Serv. Comm'n*, 575 P.2d 195, 197

(Utah 1978) (rule 65B petition). *See also Peatross v. Board of Comm'rs*, 555 P.2d 281, 284 (Utah 1976). If, however, a party claims that a tribunal has stepped out of the arena of discretion and thereby crossed the law, we review using a correction of error standard, giving no deference to the tribunal's legal determination. We give no deference to such decisions because we are in as good a position as the tribunal to determine the law. Obviously, the making of a clearly erroneous factual finding is an abuse of discretion, as is acting unreasonably or misinterpreting the law. In essence, a reviewing court never overturns a lower tribunal unless there has been an abuse of discretion.[4]

In the present case, Tolman does not challenge any of the CSC's findings of the basic facts. He does challenge the reasonableness of the CSC's conclusions that the evidence supports the charges and that his dismissal was warranted. Tolman also urges that the CSC abused its discretion by not providing him with a hearing that satisfies the minimal procedural requirements of due process. We are unable to address the reasonableness of the CSC's decision because of the lack of an adequate record.[5]

4. In *Utah Dept. of Admin. Servs. v. Public Serv. Comm'n*, 658 P.2d 601 (Utah 1983), the Utah Supreme Court characterized questions of fact as receiving the most deference and questions of law as receiving the least deference. Between the two standards it identified several questions that require an intermediate standard of review. These include: "mixed questions of law and fact" (otherwise referred to as the application of the legal rules governing the case to the facts); ultimate facts; and issues of "special law." *Id.* at 610. Inasmuch as the standard of review for such questions is one of reasonableness, the intermediate standard is simply the same standard traditionally applied when a decision is left to the lower tribunal's discretion. In other words, *Utah Dept. of Admin. Servs.* effectively holds that mixed questions of law and fact, ultimate fact questions, and special law questions are all matters reserved for the discretion of the administrative body. *Cf. Morton Int'l, Inc. v. Auditing Div. State Tax Comm'n*, 814 P.2d 581, 588–89 (Utah 1991) (under UAPA, deference is given to an agency's statutory interpretation when discretion is expressly granted to the agency by the legislature).

5. The record in this case does not constitute a true record of the hearing. *See Denver & Rio*

*Grande Western Railroad Co. v. Central Weber Sewer Improvement Dist.*, 4 Utah 2d 105, 287 P.2d 884, 887 (1955) ("The nature and extent of the review depends on what happened below as reflected by a true record of the proceedings...."). The phrase "inaudible" is entered in the transcript over 2,500 times where words or whole statements are missing. There are an additional fifty-one notations of "inaudible discussion," where apparently whole sections of the proceedings are missing. Over 160 comments are attributed to "unidentified speaker." There are also forty-seven times when the tape was turned off and then turned back on. While minor omissions may be inconsequential or may be corrected through affidavits, *Department of Community Affairs v. Utah Merit System Council*, 614 P.2d 1259, 1261 (Utah 1980), the numerous omissions from the present transcript leaves us without any confidence that the record is in fact a true record of the proceedings.

It appears the tape was typically turned off when there was an objection. The issue would apparently be discussed off-the-record until a decision was made and then the tape would be turned on and the ruling made without any explanation. This practice, combined with the deficiencies in the CSC's findings and conclu-

Even in its incomplete form, however, the record does provide us with a sufficient basis for determining Tolman's due process claims.

"In cases where the basic question is what does the law require? the standard is a correction of error standard." *Savage Indus., Inc. v. Utah State Tax Comm'n*, 811 P.2d 664, 668 (Utah 1991). The constitutional issue of whether Tolman was denied due process requires a determination of what minimal procedural safeguards are required as a matter of law. Due process challenges, therefore, are questions of general law and we give no deference to the agency's determination of what constitutes due process as reflected by the actual hearing. *Utah Dept. of Admin. Servs.*, 658 P.2d at 608. *See also Bunnell v. Industrial Comm'n*, 740 P.2d 1331, 1333 (Utah 1987).

### DUE PROCESS

"[E]very person who brings a claim in a court or at a hearing held before an administrative agency has a due process right to receive a fair trial in front of a fair tribunal." *Bunnell*, 740 P.2d at 1333. As a general rule, "due process demands a new trial when the appearance of unfairness is so plain that we are left with the abiding impression that a reasonable person would find the hearing unfair." *Id.* n. 1.

It is well settled that administrative hearings need not possess the formality of judicial proceedings. The degree of formality depends on the nature of the administrative proceedings. *Department of Community Affairs*, 614 P.2d at 1262. Inasmuch as the CSC's decision is of a judicial nature, more formality is required. *See, e.g., Kirk v. Division of Occupational & Professional Licensing*, 815 P.2d 242, 244 (Utah App. 1991) (petitioner was not afforded "the rights and procedural safeguards that must be present when an agency acts in a judicial capacity conducting a trial-type hearing"). The strict rules of evidence and procedure that apply in a courtroom, however, need not apply in an administrative hearing.[6] *See, e.g., Nelson v. Department of Employment Sec.*, 801 P.2d 158, 163 (Utah App.1990). Hearsay and other forms of evidence that might be inadmissible in a court of law may be considered during an administrative hearing. *Bunnell*, 740 P.2d at 1333. Salt Lake County has expressly determined that CSC hearings "shall not be bound either by legal procedures or by legal rules of evidence." Salt Lake County Policy and Procedures, Policy No. 5710.7.1.

Despite the flexibility of administrative hearings, there remains the "necessity of preserving fundamental requirements of procedural fairness in administrative hearings." *Nelson*, 801 P.2d at 163. It is a clear abuse of discretion for an administrative body to exercise its discretion over the manner in which it conducts its proceedings such that it denies due process to a party appearing before it.

### Hearsay

Tolman claims that the CSC denied him due process by admitting out-of-court declarations made by the male acquaintance whom Tolman was charged with assaulting. The declarations concerned the events of June 10th and 11th and had been made to Sam Dawson, Tolman's supervisor,

sions, has made it impossible for us to determine whether the CSC's decisions were reasonable. Since we grant Tolman a new hearing before the CSC based upon the partial record before us, it is not necessary that we remand this case to the district court for the development of a reviewable record. *See, e.g., Xanthos v. Board of Adjustment*, 685 P.2d 1032 (Utah 1984); *Davis County v. Clearfield City*, 756 P.2d 704 (Utah App.1988).

6. That is not to say, however, that administrative bodies have no procedural rules by which they must abide. Procedural rules may appear, for example, in statutes, ordinances, or even in an administrative body's own rules. An administrative body is bound by such rules. "[A]dministrative regulations are presumed to be reasonable and valid and cannot be ignored or followed by the agency to suit its own purposes. Such is the essence of arbitrary action." *Department of Community Affairs*, 614 P.2d at 1263. Ordinarily, we would begin our inquiry by looking to the procedural rules that govern CSC hearings; in this case, Salt Lake County Policy and Procedures, Policy No. 5710. Policy 5710, however, does not provide any rules addressing the procedural deficiencies alleged here.

as part of the CAO's investigation of Tolman. In order to admit the testimony, the CAO called upon Dawson to establish that the acquaintance was "unavailable" to testify. Dawson testified the acquaintance told him he would not attend the hearing because,

> the retributions that would be leveled against him by Ralph Tolman for testifying against him would be far more serious than any action brought by this board. He further stated that his, he felt his family was at risk as well as himself, his job and just refused to face Ralph.

Tolman's attorney promptly moved for dismissal claiming that Dawson's hearsay testimony as to why the acquaintance was not present to testify was "prejudicial beyond any ability to correct without getting to the witness." We agree that such statements were extremely prejudicial. There was no effective way for Tolman to challenge such an accusation without the acquaintance himself testifying and being subject to cross-examination. The CSC nevertheless denied Tolman's motion and permitted Dawson to continue testifying as to what the acquaintance had told him.

Assuming arguendo that the CAO satisfied its burden of showing that the acquaintance was unavailable, the testimony was still inadmissible hearsay under the rules of evidence. *See* Utah R.Evid. 804. Despite the flexibility of administrative hearings in admitting legally inadmissible hearsay evidence, due process requires minimal safeguards, including an opportunity to cross-examine witnesses.

> [T]he more liberal the practice in admitting testimony, the more imperative the obligation to preserve the essential rules of evidence by which rights are asserted or defended. In such cases the Commissioners cannot act upon their own information as could jurors in primitive days. All parties must be fully apprised of the evidence submitted or to be considered, and *must be given opportunity to cross-examine witnesses*, to inspect documents and to offer evidence in explanation or rebuttal. In no other way can a party

maintain its rights or make its defense. In no other way can it test the sufficiency of the facts to support the finding....

*Department of Community Affairs*, 614 P.2d at 1262 (quoting *Interstate Commerce Comm'n v. Louisville & Nashville R.R. Co.*, 227 U.S. 88, 93, 33 S.Ct. 185, 187, 57 L.Ed. 431 (1913)) (emphasis added).

In *D.B. v. Division of Occupational & Professional Licensing*, 779 P.2d 1145 (Utah App.1989), D.B. sought judicial review of the revocation of his license to practice as a clinical and certified social worker. Allegations were made that D.B. had participated in unprofessional conduct with a former client, identified as Jane Doe. Jane Doe's entire testimony was placed in the record by proffer. Counsel for the State narrated seven pages of information that she stated would be included if Jane Doe were to give the testimony herself. At the conclusion of the proffer, Jane Doe was asked whether the proffered statement was equivalent to the testimony she would have given. She replied, "Yes." D.B. was never given an opportunity to cross-examine Doe.

This court held that the introduction of Jane Doe's testimony by proffer, which precluded cross-examination, created "a strong element of unfairness." *Id.* at 1147. We recognized that an opportunity to challenge the truthfulness of testimony,

> [w]hile.... important in the case of documentary evidence.... is even more important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy. We have formalized these protections in the requirements of confrontation and cross-examination. They have ancient roots.

*Id.* at 1147 (quoting *Greene v. McElroy*, 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959)).

This court then held that the denial of an opportunity to cross-examine Jane Doe amounted to a denial of D.B.'s due process rights. Tolman was similarly denied an opportunity to confront and cross-examine

the absent male acquaintance. Dawson, in effect, proffered the testimony of the acquaintance. The acquaintance thereby testified in absentia through Dawson, in much the same way as Jane Doe testified through counsel for the State in *D.B.* The district court in this case held that the procedure employed by the CSC did not violate Tolman's due process rights because he was given an adequate opportunity to cross-examine, and in fact did cross-examine, the witnesses. While Tolman was given an opportunity to cross-examine Dawson, he was never given an opportunity to cross-examine the acquaintance. Even if Dawson fully and accurately relayed the statements made by the acquaintance, Tolman had no opportunity to challenge the statements themselves which were purported to be the statements of the acquaintance "whose memory might be faulty" or who might have been "motivated by malice, vindictiveness, intolerance, prejudice, or jealousy." *Id.* In other words, no amount of cross-examination of Dawson could have been considered a cross-examination of the acquaintance himself, and yet, the testimony of the acquaintance was admitted through Dawson.

The hearsay testimony also should not have been admitted under the simple test of "fairness" given in *Bunnell,* 740 P.2d at 1333. Under the "fairness" test, the evidence may only be admitted if it has "some probative weight and reliability." *Id.* The nature of the hearsay testimony given by Dawson was simply too unreliable to be fairly admitted. There was not any affirmance by the declarant as to the accuracy of the hearsay, as there was in *D.B.* The proffered testimony of the acquaintance was not made under the minimal protection of a written statement sworn to by the out-of-court declarant. *Cf. Department of Community Affairs,* 614 P.2d at 1261 ("Retention of a job is a legally-protected interest, and loss of a job should not be countenanced on the basis of statements made by fellow employees not under oath." (citations omitted)). Instead, the hearsay was offered by Dawson, as Dawson remembered it.

Tolman's attorney correctly pointed out to the CSC that Dawson was not a neutral party, but was one of the individuals seeking Tolman's dismissal. As argued by Tolman's attorney, Dawson "had the opportunity to filter that information through his mind, that mind being one of the minds that put together this whole situation." It was Dawson who initiated the investigation into the incident with the ex-girlfriend. Dawson himself interviewed the ex-girlfriend the week before the hearing and likely knew what her testimony would be. Without any implication of intentional wrongdoing on Dawson's part, we find that any retelling of what the acquaintance told him was simply too unreliable to be admitted because of his active managerial role in collecting facts regarding Tolman's dismissal.

■ The CAO seeks to minimize the impact of the hearsay by characterizing it as merely "corroborative," or in other words, harmless. The CSC, however, expressly found otherwise. It stated that the testimony of the acquaintance was "so crucial that [it] should be heard," and that "this information definitely is probative, relevant and substantive." We agree with the CSC. It is true that the hearsay testimony corroborated the testimony of Tolman's ex-girlfriend. It was, however, very critical evidence because Tolman's version of the events was at odds with the testimony of his ex-girlfriend. In very simplified terms, the ex-girlfriend's testimony was that Tolman was out of control and the clear aggressor in the confrontation. Tolman's testimony, on the other hand, was that he was in control and acted primarily out of self-defense. The acquaintance was therefore a key witness, albeit in absentia, against Tolman.

This court recognized in *D.B.* that the denial of an adequate opportunity to cross-examine a key witness requires a new hearing, even if it appears that the agency's decision may have had an adequate basis absent the tainted evidence. We reasoned:

> While it is apparent from the record that D.B.'s admission ... may have established "unprofessional conduct" under

the specific rules established by the Division ... and thus may constitute a basis upon which the Division could justify revocation of D.B.'s license, we believe that such should be permitted only in proceedings where the Division itself affords a fair hearing under due process as mandated and required by law.

*D.B.*, 779 P.2d at 1148 (footnote omitted).

Even if there is other evidence to support Tolman's dismissal, the CSC can only make such a determination in a hearing which affords Tolman due process. If the CAO wishes to use the testimony of the acquaintance at the new hearing, then it must produce him at the hearing where he may be subject to cross-examination.

### Consideration of Legal Issues

■ The overriding question before the CSC was whether Tolman was an unfit public employee. The "retention of unfit public employees is inimical to the public interest." *Department of Community Affairs*, 614 P.2d at 1261. Tolman claims the CSC did not adequately address several questions of law raised at the hearing before it rendered its decision that he was an unfit public employee. First, he claims that three of the events should not have been considered as support for his dismissal because he had already been disciplined for those matters and there had not been any repeat of the misconduct. Any consideration of that past misconduct, according to Tolman, constituted multiple punishment for a single act. Second, he claims the CSC failed to show that his off-duty conduct was relevant by failing to show a nexus between his off-duty conduct and his public employment.[7] Third, he claims that he was denied an opportunity to show why the sanction of dismissal was disproportionate. Tolman asserts the CSC would not even consider the following issues he raised in

favor of mitigating the sanction imposed: (1) whether the dismissal was an act of retaliation, (2) whether he was receiving disparate treatment, and (3) whether he had received adequate notice that his misconduct had placed his employment in jeopardy.

Tolman made several motions based upon the foregoing arguments and sought to exclude any evidence relating to certain events as being irrelevant. The CSC told Tolman his motions were "too restrictive" and refused to even answer his legal challenges, electing instead to admit any and all evidence as part of its fact-finding duty. The record gives no indication that the CSC ever addressed Tolman's legal claims during the hearing.

■ The CSC justified its non-responsiveness by indicating that it was not bound by formal rules of evidence and procedure. The fact that administrative agencies may not be bound by formal rules of evidence and procedure, does not mean that they are above the law. In the absence of formal legal rules, an administrative body must still determine what evidence should, in "fairness," be admitted. The evidence must have "some probative weight and reliability." *Bunnell*, 740 P.2d at 1333. Whether proffered evidence has probative value is in large part a question of whether the evidence is legally relevant. Therefore, an agency must at some point address the legal issues raised by a party appearing before it. *Denver & Rio Grande W. R.R. Co.*, 287 P.2d at 887 (commission could not "arbitrarily ignore" contentions raised by parties). Due process includes "an opportunity to present [one's] case, that is, [one's] evidence *and* [one's] contentions." *Peatross*, 555 P.2d at 283 (emphasis added). Ignoring a party's legal contentions denies the party a fair "opportunity to be heard and defend." *R.W. Jones Trucking v.*

---

7. While we do not reach the merits of Tolman's arguments, we do note that at the new hearing the CSC will have the burden of proving the nexus between Tolman's off-duty conduct and his public employment. *See* Policy 5710.7.1.3. In the absence of policies expressly prohibiting such off-duty conduct and warning of possible dismissal as a result thereof, mere conclusory statements that Tolman's off-duty conduct has been inimical to the CAO are not sufficient to meet that burden. *Cf. Milne Truck Lines v. Public Serv. Comm'n*, 720 P.2d 1373, 1379 (Utah 1986) (a party who claims "an adverse impact on it ... has the burden of proof on that point. That burden cannot be met simply by conclusory statements in oral testimony.").

*Public Serv. Comm'n,* 649 P.2d 628, 629 (Utah 1982).

■ At a minimum, the CSC should have addressed Tolman's legal contentions in its findings and conclusions. While it is true that the CSC stated its ultimate conclusions, administrative bodies may not rely upon findings that contain only ultimate conclusions. *See Vali Convalescent & Care Insts.,* 797 P.2d 438, 448 (Utah App. 1990). *Cf. Boston First Nat'l Bank v. County Bd. of Equalization,* 799 P.2d 1163, 1166 (Utah 1990) (agency expertise is not a substitute for making adequate findings); *Williams v. Mountain States Tel. & Tel. Co.,* 763 P.2d 796, 799 (Utah 1988) ("commission expertise is not an adequate basis upon which ultimate findings ... may be based," quoting *Mountain States Legal Foundation v. Public Serv. Comm'n,* 636 P.2d 1047, 1051 (Utah 1981)). We cannot conclude from the mere statement of the ultimate conclusions reached by the CSC that the CSC ever actually considered and determined Tolman's legal claims in accordance with established legal principles.[8] Inasmuch as there is no indication in the record that Tolman's legal claims were actually considered, we must conclude, as Tolman asserts, that his legal challenges went unheard and that he was thereby denied due process.

■ The failure of the CSC to address Tolman's legal contentions was also an abuse of discretion by the CSC because it prevented the CSC from properly performing its review of the CAO's decision to terminate Tolman's employment.

The Merit Commission's authority on review of disciplinary decisions involves two inquiries: (1) do the facts support the charges made by the department head, and, if so, (2) do the charges warrant the sanction imposed?

If the Merit Commission finds upon review that the facts support the charges against the deputy, then it must affirm the sheriff's disciplinary action, unless it finds the sanction so clearly disproportionate to the charges as to amount to an abuse of the sheriff's discretion.

*In re: Discharge of Jones,* 720 P.2d 1356, 1361, 1363 (Utah 1986) (citing *Vetterli v. Civil Serv. Comm'n,* 106 Utah 83, 90, 145 P.2d 792, 796 (1944)).

If Tolman is correct and any of the misconduct relied upon by the CAO as grounds for his termination is legally irrelevant, the misconduct may not be considered by the CSC as support for the charges against Tolman. The CSC should have therefore limited its review to only the legally relevant misconduct, if any.

■ The technical basis for our ruling is found in the residuum rule. Under the residuum rule, all hearsay and other legally inadmissible evidence admitted by an agency is set aside by the reviewing court. There must then remain some "residuum of legal evidence competent in a court of law," to support the agency's findings and

---

**8.** The Utah Supreme Court has clearly described the detail required in administrative findings in order for a reviewing court to protect the public from "arbitrary and capricious administrative actions." *Milne Truck Lines,* 720 P.2d at 1378.

[An administrative body] cannot discharge its statutory responsibilities without making findings of fact on all necessary ultimate issues under the governing statutory standards. It is also essential that [an administrative body] make subsidiary findings in sufficient detail that the critical subordinate factual issues are highlighted and resolved in such a fashion as to demonstrate that there is a logical and *legal basis* for the ultimate conclusions. The importance of complete, accurate, and consistent findings of fact is essential to a proper determination by an administrative agency. To that end, findings should be sufficiently detailed to disclose the steps by which

the ultimate factual conclusions, or conclusions of mixed fact and law, are reached. *See generally, Rucker v. Dalton,* 598 P.2d 1336, 1338 (Utah 1979). Without such findings, this Court cannot perform its duty of reviewing [an administrative body's] order in accordance with established legal principles and of protecting the parties and the public from arbitrary and capricious administrative action.

*Id.* (emphasis added). Given the incomplete nature of the record in this case, see note 5, the failure of the CSC to make detailed findings was in itself an abuse of discretion. *See Nyrehn v. Industrial Comm'n,* 800 P.2d 330, 335 (Utah App. 1990). *Cf. Davis County v. Clearfield City,* 756 P.2d at 709–10 (district court permitted to accept additional evidence in rule 65B proceedings when city council failed to enter formal findings).

conclusions of law. *Yacht Club v. Utah Liquor Control Comm'n*, 681 P.2d 1224, 1226 (Utah 1984). If there is not a residuum of legally competent evidence remaining, the agency action is reversed. *Compare Sandy State Bank v. Brimhall*, 636 P.2d 481, 486 (Utah 1981) (residuum found after hearsay evidence was set aside) *with Williams v. Schwendiman*, 740 P.2d 1354, 1357 (Utah App.1987) (no residuum found after inadmissible evidence was set aside).

Inasmuch as evidence regarding a legally irrelevant event would be inadmissible under the rules of evidence, Utah R.Evid. 402, no evidence of an irrelevant event could remain under the residuum rule. Therefore, any factual finding that an irrelevant event actually occurred could not be upheld. It would be arbitrary and capricious for the CSC to base its decision upon factual findings that are not supportable by legally competent evidence.

At the new hearing the CSC must analyze each event, determine whether the event is legally relevant given Tolman's legal arguments, discard any that are not, and determine whether the remaining legally relevant events constitute sufficient support for the CAO's decision to terminate Tolman. In so holding, we do not imply that Tolman was necessarily correct in his legal arguments, only that they were not adequately considered by the CSC.

## CONCLUSION

The admission of the hearsay evidence without an opportunity to cross-examine the acquaintance, and the failure of the CSC to address Tolman's legal claims, create an "appearance of unfairness [that] is so plain that we are left with the abiding impression that a reasonable person would find the hearing unfair." *Bunnell*, 740 P.2d at 1333 n. 1. We therefore hold that the CSC deprived Tolman of his procedural due process rights and vacate the order of the district court refusing to grant Tolman relief. Pursuant to Rule 65B, we direct that the CSC provide Tolman with a new hearing consistent with this opinion.

JACKSON and RUSSON, JJ., concur.