Bernard A. FEUERSTEIN, et al., Plaintiffs,

v.

Richard L. BURNS, et al., Defendants.

Civ. A. No. 78–0790–K.

United States District Court, S.D. California.

May 6, 1983.

Melvyn I. Weiss, New York City, William S. Lerach, Keith F. Park, Milberg, Weiss, Bershad & Specthrie, San Diego, Cal., for plaintiffs.

Gerald L. McMahon, Timothy D. Kelley, Seltzer, Caplan, Wilkins & McMahon, San Diego, Cal., for defendants.

Carl Liggio, Gen. Counsel, New York City, for Arthur Young & Co.

J. Anthony Sinclitico, III, Brian Johnson, Gibson, Dunn & Crutcher, San Diego, Cal., for R.L. Burns Corp., Kenneth M. Poovey, George Fox, Franklin T. Lloyd and Raymond G. Larson.

Robert G. Steiner, Charles A. Bird, Luce, Forward, Hamilton & Scripps, San Diego, Cal., for Richard L. Burns.

David W. Ault, Elizabeth F. Bradley, Ault, Midlam & Deuprey, San Diego, Cal., for C. Hayden Atchison and Thomas H. Cole.

Carl J. Schuck, Mark H. Van Brussel, Overton, Lyman & Prince, Los Angeles, Cal., for James R. Lesch and Athelstan Siplhaus.

## MEMORANDUM OPINION RE: ATTORNEYS' FEES

KEEP, District Judge.

## INTRODUCTION

The Court has before it an application by Milberg, Weiss, Bershad, Specthrie & Ler-

ach (hereinafter referred to as either "Milberg, Weiss" or "the firm") for attorneys' fees and expenses in this securities fraud class action. The firm seeks payment for approximately 3,850 hours of attorney time, valued at at $423,000.00. This figure was achieved by multiplying the firm's historic billing rates for these hours by a 1.09 risk factor. The firm also seeks compensation for approximately $127,000.00 in costs. In sum, Milberg, Weiss seeks a total award of $550,000.00 for its fees and costs.

## FACTS

The plaintiffs, Bernard and Irene Feuerstein, purchased one hundred shares of R.L. Burns & Co. stock in late December, 1977. R.L. Burns & Co., which now conducts business as Pyro Energy Corporation (hereinafter referred to as "the Company") explores for and develops oil, gas, coal and uranium. Another defendant, Arthur Young & Co., is a public accounting firm that provides accounting and financial services for the Company. The remaining defendants are officers and directors of the Company and its various subsidiaries.

In their third amended complaint, plaintiffs allege that the defendants, acting pursuant to a conspiracy to both induce purchases of the Company's stock and support the stock's market price at an artificially high level, knowingly and/or recklessly made materially false or misleading statements or omissions and engaged in practices that worked a fraud and deceit upon plaintiffs and the class whom they represent. Third Amended Class Action Complaint ¶ 15. *See* Securities and Exchange Act of 1934 § 10(b), 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b–5. Plaintiffs essentially allege that the Company failed to adequately disclose the effect that Financial Accounting Standard 19 (FAS 19) would have on the Company's reported profitability. *E.g.* Third Amended Class Action Complaint ¶¶ 9–12, 15. The complaint further alleges that the Company misrepresented the condition of its coal and uranium operations. *E.g.* Third Amended Class Action Complaint ¶¶ 13, 15.

The course of this lawsuit was unremarkable. Defendants twice moved to dismiss the complaint under Federal Rules of Civil Procedure 9(b) and 12(b)(6); the motion was granted in part the first time and denied the second time. *See Feuerstein v. Burns,* No. 78–0790 (S.D.Cal. filed May 10, 1979) (Order Denying Motions to Dismiss). The plaintiff class was certified, *see Feuerstein v. Burns,* No. 78–0790 (S.D.Cal. filed Sept. 13, 1979) (Order Certifying Class), and a motion to certify an interlocutory appeal of this order was denied. *See Feuerstein v. Burns,* No. 78–0790 (S.D.Cal. filed September 3, 1980) (Order Denying Request for Certification of Interlocutory Appeal). Discovery commenced in 1979, continued through a status conference before Magistrate Infante, and was stayed by order of Magistrate McCue during settlement negotiations in April of 1982. The parties settled the action in late 1982, and submitted the settlement to this Court for preliminary approval on December 13, 1982. It is with the settlement agreement's attorneys' fees and costs provisions that this Court is now concerned.

The settlement essentially provides that the Company will distribute to those shareholders filing valid claims up to 100,000 new shares of the Company's common stock on a pro rata basis after those class members submit a Proof of Claim and Release and Covenant Not to Sue form to the Clerk of the Court. *See* Stipulation of Settlement ¶¶ 1, 2, 9. Within approximately three years from the date of distribution of these initial shares, *see id.* ¶ 10(c), the stock must reach a value of $10.00 per share, or the Company must exercise one of three options. Under two of these options, the Company must issue additional shares of its common stock to class members, the number of which is keyed to the difference between the open-market, per-share price of the initial 100,000 block and $1,000,-000.00. *Id.* ¶¶ 4(b), 4(c). The third option allows the Company to distribute cash to class members in an amount equal to the difference between the value of the 100,000 block share and $1,000,000.00. *Id.* ¶ 4(d).

Plaintiffs contend that this settlement has a minimum value of $1,000,000.00 to the class, regardless of the option selected.

The settlement agreement also provides for the payment of attorneys' fees and costs to Milberg, Weiss, plaintiffs' counsel. The parties stipulated that Milberg, Weiss would apply to the Court "for an allowance of counsel fees and expenses in a sum not to exceed $550,000.00," *id.* ¶ 5, to be paid by the Company, in part from a $450,000.00 attorneys' fees escrow account it agreed to establish. In return, the Company and other defendants agreed to "neither support nor oppose the application for counsel fees and expenses up to $550,000.00." *Id.* This Court thus finds itself in the unenviable position of determining and awarding "reasonable" attorneys' fees and costs without the benefit of briefing by adverse parties.

## DISCUSSION

A. *The Law Regarding the Award of Attorneys' Fees.*

■ In determining the propriety of attorneys' fees awards, this Court must decide whether the amount requested is reasonable by considering the primary and somewhat conflicting rationales justifying the non-statutory award of attorneys' fees in class actions such as this. *See* Reporter's Transcript of Proceedings, *Hearing Approval of Settlement* 18–20 (Feb. 15, 1983) (hereinafter referred to as "February 15 Transcript") (parties agree that the Court must use its independent judgment in awarding fees and costs); *In re Equity Funding Corp. of America Securities Litigation,* 438 F.Supp. 1303, 1326 (C.D.Cal.1977) (hereinafter referred to as *In re Equity Funding*). The Court is cognizant that attorneys' fees should be adequate to promote the prosecution of consumer class actions and to compensate counsel for the benefit their services confer on the class. *E.g., In re Capital Underwriters, Inc. Securities Litigation,* 519 F.Supp. 92, 99 (N.D.Cal.1981). Juxtaposed to these laudible rationales, however, are both the realization that the opportunity to represent the class is one created not by the enterprise of counsel alone, but by a judicial determination, *id.,* and the concern that attorneys' fees awards should neither constitute nor appear to be windfalls for counsel. *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 469 (2d Cir.1974). Thus, while counsel is entitled to an "allowance of counsel fees and expenses" pursuant to the terms of the settlement agreement, this Court must exercise moderation in determining the allowance's size. *In re Capital Underwriters, Inc. Securities Litigation,* 519 F.Supp. at 98.

■ Courts in this circuit utilize several approaches to determine what is "reasonable." In *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir.1975), *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976), the Ninth Circuit adopted 12 "guidelines" used by the Fifth Circuit that district courts must balance in awarding reasonable attorneys' fees. *See, Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). These guidelines, known either as the *"Kerr"* or *"Johnson"* guidelines, include case-by-case evaluations of "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d at 70. While it is an abuse of discretion not to consider these guidelines, *id.,* a "statement by the Court that it has considered a *Kerr* factor suffices." *Manhart v. City of Los Angeles, Department of Water & Power,* 652 F.2d 904, 908 (9th Cir.1981), *petition for cert. filed,* —— U.S. ——, 103 S.Ct. 2420, 77 L.Ed.2d 1310 1983). *See also Rivera v. City of Riverside,* 679 F.2d 795, 796–97 (9th Cir.1982). This approach has been criticized primarily because the factors are redundant and lack a

"practical framework for application." *Moore v. Jas. H. Matthews & Co.,* 682 F.2d 830, 839–40 (9th Cir.1982) (footnote omitted).

Another approach acknowledged by the Ninth Circuit, *e.g. Brandenburger v. Thompson,* 494 F.2d 885, 890 n. 7 (9th Cir. 1974), is the "lodestar" approach adopted by the Third Circuit in *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161 (3d Cir.1973). This approach requires the court to calculate the number of hours spent by counsel in prosecuting the action, multiply that number by the prevailing rate per hour for similar legal services in the legal community, and then adjust this "lodestar" figure to reflect the quality and risk involved in counsel's efforts. *Id.* at 166–69. This approach, too, is criticized for overemphasizing the number of hours expended, and thus allowing counsel to artificially inflate attorneys' fees requests. *Stanford Daily v. Zurcher,* 64 F.R.D. 680, 682 (N.D.Cal.1974), *aff'd,* 550 F.2d 464 (9th Cir.1977), *rev'd on other grounds,* 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978).

■ Rather than choose one over the other, this Court will blend the *Kerr* guidelines into the analytic framework of the lodestar approach. This approach has been adopted by other district courts in this circuit, *e.g. In re Capital Underwriters, Inc. Securities Litigation,* 519 F.Supp. at 100; *Donnarumma v. Barracuda Tanker Corp.,* 79 F.R.D. 455 (C.D.Cal.1978), and noted with approval by the Ninth Circuit, *Moore v. Jas. H. Matthews & Co.* 682 F.2d at 840; *Brandenburger v. Thompson,* 494 F.2d at 890 n. 7, as it combines the strengths and minimizes the weaknesses of both the *Kerr* and lodestar approaches. Accordingly, this Court will "begin by equating the first factor in the lodestar approach, 'hours spent,' with the 'time and labor required' element of [*Kerr*] . . ., then consider the other [*Kerr*] factors in setting the hourly rate and determining whether to augment or decrease the award based on quality or contingency considerations." *Moore v. Jas. H. Matthews & Co.,* 682 F.2d at 840–41 (quoting *In re Capital*

*Underwriters, Inc. Securities Litigation,* 519 F.Supp. at 100).

### B. Hours Reasonably Spent Prosecuting This Action.

In its original memorandum and affidavit in support of the requested attorneys' fee award, Milberg, Weiss submitted a lengthy analysis of the case explaining why the benefit to the class was significant and why a fee and cost award of $550,000.00 should be ordered; however only two pages purported to account for time spent by counsel and expenses incurred were attached. The first page attempted to account for over 3,850 hours of attorney and paralegal time using the following format:

1978–79

| PERSONNEL | HOURS | RATE | LODESTAR |
|---|---|---|---|
| L. Milberg | 27.25 | 170 | 4,632.50 |

Declaration of Keith F. Park In Support of the Settlement and Award of Attorneys [sic] Fees and Costs, Exhibit "A" (filed January 28, 1983) (hereinafter referred to as "January 28 Accounting"). This format did not explain how the over three thousand hours were spent, and since the parties expected this Court to use its independent judgment in analyzing the appropriateness of the fees and costs in this case, February 15 Transcript at 18, the Court's staff notified Milberg, Weiss that further breakdowns were necessary. *Id.* at 19. The firm agreed to provide further documentation, as reflected in the February 15 Transcript at 24:

THE COURT: And by the same token, I have to see where the hours were spent and what they were spent for.

MR. PARK: That's fine. I was just unclear as to what sort of detail you wanted.

THE COURT: Do you have five of your own attorneys at Lubach's for lunch talking about the case and billing for each other's hours plus Lubach's lunch . . .?

. . . . Just that kind of detail. Back it up.

MR. PARK: Sure, that's fine. . . .

Milberg, Weiss' second attempt to detail how "the hours were spent and what they were spent for" was delivered in an unfiled, hand-delivered letter, addressed to the Court and dated March 7, 1983 (hereinafter referred to as "March 7 Accounting"). A typical entry in this coded and abbreviated accounting follows:

| | | | 1981 | | | | |
|---|---|---|---|---|---|---|---|
| A | B | C | D | E | F | G | TOTALS |
| WSL | 3.50 | 307.75 | 17.50 | 7.75 | 11.75 | | 348.25 |

Each letter corresponds to a particular task. For example, "D" represents Court Appearances. Milberg, Weiss also supplied the Court with a copy of its costs ledger, which is a 19-page document detailing expenses incurred by the firm in this action. Although the ledger is at times illegible, it does detail how funds were expended, for example, on meals, transportation and hotel charges. These costs briefly will be discussed below.

In reviewing the time sheets provided, it became clear to the Court that further documentation was still required. The submitted documentation now included hours spent by four attorneys whose names did not appear in the January 28 Accounting. And for those attorneys whose names did appear on both accountings, seven of the thirteen charged for additional hours. For example, in the January 28 Accounting, Mr. Park listed 443.50 hours at $125.00 per hour for 1982. In the March 7 Accounting, however, Mr. Park listed 465.50 hours at $125.00 for the same time periods. This unexplained 22-hour time differential, when multiplied by both the historic billing rate and the "risk multiplier" would cost the defendant an additional $2,997.50. Further, it appeared that approximately 65% of the firm's time in this case was spent reviewing documents and reviewing discovery and "other factual investigations." Accordingly, the Court's staff again contacted Milberg, Weiss, and requested a copy of the firm's daily time sheets. In an unfiled packet that was hand-delivered to chambers on March 16, 1983, the firm provided its time sheets, as well as a list of the date, deponent, and location of the nineteen depositions taken in connection with this case.

The Court reviewed Milberg, Weiss's time sheets, charts and ledgers, and held an in-chambers conference on attorneys' fees and costs on March 8, 1983. At the hearing, the Court repeated the concerns it expressed at the February 15, 1983 hearing. First, although this action had been transferred to the Court two years after filing of the complaint, during the nearly three years this Court supervised the case, it had seen little court-related activity to justify a half-million dollar fee and cost award. See Reporter's Transcript of Proceedings, In Chambers Conference on Attorneys' Fees and Costs 5 (March 8, 1983) (hereinafter referred to as "March 8 Transcript"). Second, 65% of the total hours billed by counsel, representing approximately $274,950.00, was for discovery and document review. A typical entry in the firm's time sheets, for example, is "reviewing documents." From this entry, the Court could not determine whether the same documents were being repetitively reviewed, why it was necessary to "review documents" for up to ten hours a day, and why attorneys—both partners and associates—were reviewing documents instead of paralegals or accountants. March 8 Transcript at 23–24. Counsel for Milberg, Weiss suggested that the attorneys working on the case could prepare affidavits explaining what documents they reviewed and why the time spent was necessary. Id. at 19. The Court agreed that submission of affidavits would be sufficient. Id. at 23–24. Although Milberg, Weiss's counsel first indicated that he was still unsure of the kind of detail the Court required, id. at 22, he later indicated at page 29 of the March 8 Transcript that he had "a clear understanding of what [the Court] would want."

On April 19, 1983, Milberg, Weiss filed a supplemental affidavit by Keith Park in support of the firm's request for attorneys' fees and costs. In telephone conversations with the Court's staff, Mr. Park indicated that he considered the award request submitted, and that a further hearing would not be necessary. The supplemental affidavit did not contain affidavits by other Mil-

274

berg, Weiss attorneys, nor did it attempt to show that documents were not repetitively reviewed. The affidavit did, however, attach as exhibits copies of the March 7 Accounting, the case's chronology, and a strategy and impressions memo.

■ This Court finds Milberg, Weiss's documentation justifying a requested half-million dollar award clearly inadequate. The firm has received *four* chances to document and justify its request. Even though the firm's counsel indicated at *both* hearings that he was "merely" unsure of the kind of detail the Court desired, he later indicated in each hearing that he in fact did understand what type of detail the Court required. Counsel indicated that he would attempt to obtain affidavits from the attorneys in this case explaining under penalty of perjury what tasks they performed. No such affidavits were received, and no explanation was proffered for their absence. And counsel's representations that no other court has ever asked for such documentation notwithstanding, March 8 Transcript at 24, this Court can only note that Milberg, Weiss's documentation in support of attorneys' fees has apparently been inadequate to justify requested awards in districts other than the Southern District. *E.g., In re Equity Funding,* 438 F.Supp. at 1344 (Judge Lucas indicated that he found "no basis in fact for the claim that [Milberg, Weiss] rendered services that benefitted the members of the classes involved," and thus denied the firm's request for attorneys' fees and costs); *Weiss v. Drew National Corp.,* 465 F.Supp. 548, 553 (S.D.N.Y.1979) (Milberg, Weiss's application failed to document historic billing rates); *Desimone v. Industrial National Corp.,* 83 F.R.D. 615, 621 (S.D.N.Y.1979) (Milberg, Weiss's application improperly billed paralegal time as attorney time, used current instead of historic billing rates, and failed to include affidavits that "clearly delineat[ed] the projects that *each lawyer* worked on," even though other counsel's applications did contain such affidavits) (emphasis added). Milberg, Weiss clearly shoulders the burden to justify its requested award and assumes the risk for failure to provide adequate documentation.

*In re Equity Funding,* 438 F.Supp. at 1327. Accordingly, this Court must exercise its discretion, and review the case file and documentation the firm did provide to determine what time should reasonably have been spent.

■ Considering the disparity between the January 28 Accounting and the March 7 Accounting, this Court will rely on the earlier figures, since fees could have been awarded at the February 15 hearing had proper documentation been provided and there is no explanation for the subsequent larger figures. The Court will not include the 103 hours claimed to have been billed in 1983 because the firm provided us neither with daily time sheets documenting the time spent, nor with an affidavit that explains why it reasonably took 103 hours to do whatever the firm did. The Court will not include paralegal time as attorney time that will be multiplied by the 1.09 risk factor. *E.g., In re Equity Funding,* 438 F.Supp. at 1330; *Desimone v. Industrial Bio-Test Laboratories, Inc.,* 83 F.R.D. at 621.

■ After deducting paralegal time and excluding the time claimed in 1983, it appears that the firm seeks compensation for approximately 3,445 hours. The Court acknowledges that this case presented interesting and somewhat complex legal and substantive accounting problems, as explained in the affidavits by Keith Park filed in support of the requested fees and costs. However, after reviewing the court file and provided documents, the Court feels that the time expended is excessive. It is difficult to be precise in the absence of adequate documentation, but the Court does note that approximately 65% of the attorney time was spent in reviewing discovery, reviewing documents and preparing the firm's chronology. The Court further notes that as a result of Magistrate McCue's order, only 19 depositions were actually taken in this case, and it does not appear reasonable to justify the inordinate amount of time spent for discovery by contending that attorneys were preparing for depositions.

The assertion that significant time was spent preparing for depositions that never occurred also is not substantiated by the daily time sheets provided—so far as they are legible. And as indicated earlier in this order, the firm chose not to provide this Court with affidavits from the attorneys billing these hours explaining why the time spent was reasonable.

■ Another factor that weighs heavily in the Court's consideration of the amount of hours reasonably necessary to prosecute this action is the nature and scope of the recovery in this case. *See In re Capital Underwriters, Inc. Securities Litigation,* 519 F.Supp. at 101; *Knutson v. Daily Review, Inc.,* 479 F.Supp. 1263, 1269 (N.D.Cal.1979). The settlement does not appear to be excessively favorable to the class. Plaintiffs alleged that at the time they bought stock, it was trading for $10.00–13.00 per share; the alleged fraud, when discovered, is alleged to have caused the stock to drop to $2.50–5.00 per share. Third Amended Class Action Complaint ¶ 21. The stock had risen in value at the time the settlement was approved, and the Company has three years for the stock to reach $10.00 per share. Only if it does not must the Company exercise one of the three options provided for by the settlement, and deciding which option is left to the discretion of the Company. The Court does not mean to impugn the settlement. The Court found that the settlement was reasonable, particularly in light of the natural vicissitudes of this type of stock, the difficulty of proving fraud in this particular case, and the effect of such fraud, if proven on this stock price, when the stock market itself has been peculiarly fickle. But, it is equally apparent that the bottom line of the settlement is that the Company has gained three years to prove the worth of the stock. *See* Stipulation of Settlement ¶ 4. Further, all parties apparently overestimated the number of shares damaged, *see* March 8 Transcript at 28–29, and thus this action does not appear to be one that confers a significant benefit on society much less on a significant class. Considering all the above factors discussed, this Court deducts 1,200 hours from the 3,445 hours "billed," and hereby finds that 2,245 hours reasonably should have been spent prosecuting this action.

### C. The Hourly Rate.

■ In *Moore v. Jas. H. Matthews & Co.,* 682 F.2d at 840, the Ninth Circuit explained:

> "Unless counsel is working outside his or her normal area of practice, the billing-rate multiplier is, for practical reasons, usually counsel's normal billing rate. Billing rates usually reflect, in at least a general way, counsel's reputation and status . . . ."

*See also, City of Detroit v. Grinnell Corp.,* 495 F.2d at 473 (quoting *Lindy Brothers Building Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d at 167, 170). Milberg, Weiss clearly was not "working outside its normal area of practice" in this case. The Court acknowledges the firm's experience, reputation and ability in prosecuting securities fraud actions such as this. This case, as noted earlier in this order, involved interesting and somewhat complex accounting questions. Based upon this Court's knowledge of the billing rates charged by firms of comparable expertise and stature in the Southern District, the rates charged for the firm's attorneys are clearly reasonable.

The firm's average billing rate for the period encompassed by this litigation is approximately $100.00 per hour. Multiplying this rate times the number of hours that reasonably should have been spent in prosecuting this action, this Court calculates the lodestar figure to be $224,500.00.

### D. Risk Multiplier.

■ Milberg, Weiss multiplied its lodestar figure by a 1.09 contingency or risk multiplier. *See* January 28 Accounting. The multiplier is designed to compensate counsel for the inherently contingent nature of litigation such as this. As courts repeatedly recognize, the most vigorous and competent of efforts by counsel do not guarantee success. *E.g. In re Equity Fund-*

*ing,* 438 F.Supp. at 1331–32 (citing *City of Detroit v. Grinnell Corp.,* 495 F.2d at 471). As explained in *Knutson v. Daily Review, Inc.,* 479 F.Supp. at 1277, the Court should consider the following factors in determining whether an increase is justified:

1.  Analysis of plaintiff's burden—considering the legal and factual complexity of the case, the probability of defendant's liability, whether damages would be difficult or easy to prove;

2.  Risks assumed in developing the case—number of hours and out-of-pocket expenses risked without guaranteed compensation; and

3.  Delay in receipt of payment for services rendered.

The Court has considered these factors, and finds the 1.09 risk multiplier reasonable. Multiplying the lodestar times the risk multiplier, this Court concludes that $244,705.00 should be awarded Milberg, Weiss as compensation for the hours that reasonably should have been spent prosecuting this action.

### E.   *Costs.*

■ As indicated earlier in this order, paralegal time will be treated not as attorney time but as a cost. The firm's records indicate that its paralegals spent approximately 404 hours, January 28 Accounting, and these hours are substantiated by the daily time sheets submitted. However, the time-sheet entries submitted by the paralegals are subject to the same infirmities found in attorneys' time sheets. Typical entries here include "document organization," "accounting document index" and "notice to take depositions." The firm has not given the Court sufficient information to determine whether up to 12 hours a day reasonably should be spent performing these tasks, and the time sheets themselves for the most part do no better. Although the records are thus not entirely clear, it appears that the paralegals spent most of their time organizing documents, and cite-checking the firm's legal memoranda. Considering the number of the former and the

length of the latter, this Court concludes that 350 hours reasonably should have been spent performing the paralegals' tasks. The Court further finds that paralegal time should be billed at $20.00 per hour, as opposed to the $30.00 to $40.00 per hour charged in the firm's January 28 Accounting. The Court is aware that many law firms in the Southern District charge as little as $15.00 per hour for paralegal time, and that some firms bill out lawyers who have successfully passed the California bar examination at $40.00 per hour. Accordingly, the per-hour fee is excessively high. *See Knutson v. Daily Review, Inc.,* 479 F.Supp. at 1276 ($20.00 per hour for paralegals held appropriate), and the firm will receive $7,000.00 as compensation for the time billed by its paralegals.

■ This Court has also reviewed the costs ledger supplied by counsel. It appears to document the sums expended by the firm for hotels, meals and transportation costs, document production costs, postage charges and the like. However, when the costs indicated in the ledger are compared with those listed in Exhibit "B" of the January 28 Accounting, there is an unexplained disparity between the figures. This Court independently added the ledger's entries and concluded that the firm incurred costs in the amount of $121,026.52 not the $127,077.02 requested. Hence, the Court will award total costs, including paralegal time of $128,026.52.

### CONCLUSION

This Court concludes that Milberg, Weiss reasonably should have incurred $244,705.00 in attorneys fees and $128,026.52 in costs. Accordingly, the firm shall be awarded $372,731.52 in attorneys' fees and costs, to be paid from the Escrow Account established by the Company for that purpose.

IT IS SO ORDERED.